IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| SUSAN L. HOLBERT, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 14-cv-143-TLW |
|  | ) |  |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff Susan L. Holbert seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), and Fed. R. Civ. P. 73, the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 6). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor

substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a fifty-one year old female, completed her application for Title II benefits on May 1, 2011. (R. 184-87). Plaintiff alleged a disability onset date of March 1, 2008. (R. 184). Plaintiff claimed that she was unable to work due to symptoms and limitations associated with degenerative disc disease, chronic back and leg pain, nerve damage, and osteoporosis. (R. 196). Plaintiff's claim for benefits was denied initially on September 8, 2011, and on reconsideration on February 22, 2012. (R. 135, 141-45, 137, 147-49). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on December 6, 2012. (R. 80-134). The ALJ issued a decision on January 17, 2013, denying benefits and finding plaintiff not disabled. (R. 59-79). The Appeals Council denied review, and plaintiff appealed. (R. 1-7; dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff was insured for Title II benefits through March 31, 2012. (R. 64). Plaintiff had not performed any substantial gainful activity since her alleged onset date of March 1, 2008. Id. At step two, the ALJ found that plaintiff had the severe impairments of "degenerative disc disease status post L4-L5 fusion (August 2009) with hardware removal (September 2010); osteoporosis; hypertension; COPD; and bronchitis." Id. After analyzing the "paragraph B" criteria, the ALJ determined that plaintiff's medically determinable impairments of depressive disorder and panic disorder, not otherwise specified, were non-severe impairments that only slightly impacted her ability to work. (R. 64-65).

At step three, the ALJ determined that plaintiff's impairments did not meet or equal a listed impairment. He "placed specific emphasis upon **1.04 Disorders of the Spine**." (R. 66) (emphasis in original). After reviewing plaintiff's testimony, the medical evidence, and other evidence in the record, the ALJ concluded that plaintiff retained the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) with no more than the occasional lifting up to 20 pounds, no more than the frequent lifting or carrying up to 10 pounds; standing/walking 6 hours out of an 8-hour workday; sitting 6 hours out of an 8-hour workday; no more than occasional stooping; and no exposure to temperature or humidity extremes or irritants such as gases, fumes, and chemicals.

(R. 66). At step four, the ALJ found that plaintiff was unable to perform her past relevant work as a hair stylist and an "Owner/Operator for a Hair Salon." (R. 69-70). At step five, the ALJ determined that plaintiff's age category was "closely approaching advanced age," that she had at least a high school education, could communicate in English, and acquired work skills transferable to other work in significant numbers in the national economy. (R. 70). The ALJ relied on testimony from a vocational expert to conclude that plaintiff could perform the representative jobs of check cashier (semiskilled, sedentary, SVP 3); sorter (unskilled, sedentary, SVP 2); telephone information clerk (unskilled, sedentary, SVP 2); order clerk (unskilled, sedentary, SVP 2); cashier (unskilled, light, SVP 2); and office helper (unskilled, light, SVP 2). (R. 70-71). Because he found that other work existed in significant numbers in the national economy that plaintiff could perform, the ALJ determined that she was not disabled. (R. 71).

## ANALYSIS

Plaintiff raises four issues on appeal: (1) that the ALJ erred in determining plaintiff's impairments did not meet Listing 1.04(A); (2) that the ALJ improperly evaluated plaintiff's treating physician, Dr. James Young's, opinion; (3) that "all jobs identified by the vocational examiner were eliminated by inclusion of limitations in the ALJ's residual functional capacity

3

hypothetical and should have led to a finding of disabled"; and (4) that the ALJ failed to establish at step five that any work existed in significant numbers that plaintiff could perform. (Dkt. 13). Plaintiff's second allegation of error is dispositive, so the Court will address it first.

**Treating Physician's Opinion**

The record shows that James W. Young, M.D. of Gemini Medical Group was plaintiff's treating physician from January 2009 through November 2012. (R. 536-46). Records from Blue Stem Pulmonary Medicine in 2008 reflect Dr. Young as plaintiff's "personal physician." (R. 510). During that time, Dr. Young treated plaintiff and referred her to many specialists to address several different complaints. (R. 536-46). Dr. Young completed a rather restrictive "Medical Source Statement" form on November 13, 2012, opining that plaintiff could sit continuously for one hour before needing to change position by walking for about 15 minutes, and that she could only sit for a total of three hours in an eight hour day; that she could stand and/or walk continuously for one hour before needing to change position by lying down or reclining for 15 minutes, and that she could only walk and/or stand for a total of less than one hour in an eight hour workday; that she did not need any assistive devices for ambulation; and that she needed rest breaks in addition to the standard scheduled workday morning, lunch, and afternoon breaks to relieve pain for a total cumulative resting time of an additional two hours during an eight hour workday. (R. 519-21). Additionally, Dr. Young opined that plaintiff could frequently lift and/or carry up to ten pounds, and occasionally lift and/or carry up to twenty pounds; she should never stoop, but could occasionally balance, flex forward and backward, and rotate left and right. (R. 522-23). Dr. Young opined that plaintiff could use her hands bilaterally to frequently reach, handle, and finger. (R. 523). Dr. Young then confirmed that in his opinion, "plaintiff's condition existed and persisted with the restrictions as outlined in this Medical Source Statement at least

4

since March 1, 2008" due to his diagnoses of degenerative disc disease and chronic back pain due to degenerative disc disease. (R. 524).

The ALJ's weight discussion of Dr. Young's opinion follows:

> A Medical Source Statement was supplied by Dr. Young on November 13, 2012. Dr. Young indicated that she can sit 3 hours total in an 8-hour workday, stand and/or walk less than 1-hour total in an 8-hour workday, can frequently lift and/or carry up to 10 pounds, and can occasionally lift and/or carry up to 20 pounds. She should avoid stooping. She can occasionally balance. Concerning the neck, she is limited to occasional forward flexion, backward flexion, rotation right and rotation left. Further, Dr. Young indicated that the claimant needs more rest (defined on the form as lying down or reclining in a supine position in bed or in an easy chair) in addition to a morning break, a lunch period, and an afternoon break scheduled at approximately 2 hour intervals (Exhibit 25F). The undersigned affords little weight to the opinion of Dr. Young. At the hearing, the claimant stated that when she gave Dr. Young's nurse, Donna, the Medical Source Statement, Donna then began to ask her the questions that are outlined on the form indicating that the form is based on subjective complaints not objective findings even though Dr. Young signed off on the form. Even if the claimant had not been asked the questions on the form, the limitations given are inconsistent with the medical evidence of record, the last visit to Dr. Young was April 5, 2012, which showed a normal physical examination of the back and extremities (Exhibit 28F, page 2).

(R. 69).

Plaintiff argues that Dr. Young's opinion "addressed the severity of [plaintiff's] impairments," was "well-supported by the clinical and laboratory diagnostics," and that substantial evidence contained within the record supports his opinion. (Dkt. 13 at 5). Plaintiff also argues that "had the ALJ given appropriate weight to Dr. Young's opinion as expressed in the MSS, such would require a finding of disabled."[1] Id. The Commissioner responds by pointing out an inconsistency in Dr. Young's opinion (which the ALJ did not note), and then warns the Court to decline plaintiff's invitation "to reinterpret the evidence in her favor and replace the ALJ's reasoned judgment with its own findings." (Dkt. 14 at 7). The Commissioner

---

[1] This argument is an invitation to reweigh evidence that the Court will defer to the ALJ on remand. See Hackett, 395 F.3d at 1172 (the Court will not reweigh evidence).

then attempts to create a link between the ALJ's conclusion and other conflicting evidence of record. (Dkt. 14 at 8). No such link is provided by the ALJ.

Ordinarily, a treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); see also Hackett, 395 F.3d at 1173-74 (citing Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)). If the ALJ discounts or rejects a treating physician opinion, he is required to explain his reasoning for so doing. See Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987) (stating that an ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion); Thomas v. Barnhart, 147 F. App'x 755, 760 (10th Cir. 2005) (holding that an ALJ must give "adequate reasons" for rejecting an examining physician's opinion and adopting a non-examining physician's opinion).

The analysis of a treating physician's opinion is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Watkins, 350 F.3d at 1300. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

However, even if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, treating physician opinions are still entitled to deference

and must be evaluated in reference to the factors enumerated in 20 C.F.R. § 404.1527. Those factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins, 350 F.3d at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. See Anderson v. Astrue, 319 F. App'x 712, 717 (10th Cir. 2009) (unpublished).[2]

Here, the ALJ acknowledged that Dr. Young was plaintiff's "primary care physician," but did not discuss any of Dr. Young's records beyond one visit on April 5, 2012. (R. 69). The ALJ represented the reason for that visit as "low back pain," and stated the results of that visit as "Physical examination was normal and extremities were without edema (Exhibit 28F, page 2)." Id.

The record shows that plaintiff presented to Dr. Young on April 5, 2012 with complaints of allergies and a nonproductive cough. (R. 537). Dr. Young's focus was on plaintiff's allergies during this visit because that was her chief complaint. Id. However; Dr. Young did note plaintiff's report of "some discomfort in her low back," that she was taking Lyrica for pain, and listed "Postlumbar laminectomy with intrabody fusion August 2009; Staff wound infection with

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

subsequent drainage and removal of hardware; [and] Chronic low back pain" as several of his listed impressions that day. Id. The ALJ did not mention these notes.

The only other reason the ALJ states for "afford[ing] little weight to the opinion of Dr. Young" is that he believed Dr. Young's nurse completed the Medical Source Statement form based on plaintiff's subjective complaints, even though Dr. Young signed the form. (R. 69). It goes without saying that Dr. Young's opinion, as set forth in the Medical Source Statement form, need not be considered if it is not actually his opinion; that is, if it is simply the subjective statements of plaintiff as recorded by Dr. Young's nurse. The ALJ asked plaintiff at the hearing if she was present when Dr. Young filled out the Medical Source Statement form, and she said "no." (R. 90-1). He then asked if Dr. Young or anyone else in his office asked plaintiff any of the questions from the form. (R. 91). Plaintiff replied, "Oh, yeah, I think Donna, his nurse, she – asked me some questions." Id. This evidence neither establishes that Dr. Young's nurse completed the form nor does it establish that the opinions contained in the form were not those of Dr. Young, particularly in light of his signature on the document. More importantly, this evidence does not amount to substantial evidence supporting either of these conclusions.[3]

Thus, this case must be remanded to the ALJ with direction to perform a treating physician's analysis of Dr. Young's opinion.[4] Watkins, 350 F.3d at 1301.

## CONCLUSION

For the foregoing reasons, the ALJ's decision finding plaintiff not disabled is **REVERSED and REMANDED** for further proceedings. Specifically, the ALJ should perform a proper analysis of Dr. Young's treating physician opinion. The Court finds no reversible error in

---

[3] There is ample evidence in the record that conflicts with Dr. Young's opinion, but the ALJ failed to cite that evidence and also failed to conduct a proper treating physician analysis.

[4] As noted by plaintiff, if the ALJ wishes to clarify whether or not Dr. Young completed the form himself by contacting Dr. Young, the ALJ may do so.

the other aspects of this case. See <u>Wells v. Colvin</u>, 727 F.3d 1061, 1066 (10th Cir. 2013) (reversing and remanding for re-evaluation of physical limitations and finding no reversible error in other aspects of the ALJ's decision).

SO ORDERED this 24th day of September, 2015.

_____
T. Lane Wilson
United States Magistrate Judge